PEDRO PAGÁN-RUIZ, Plaintiff and Appellee, *v.* PENSION BOARD OF PERMANENT OFFICIALS AND EMPLOYEES OF PORTO RICO, Defendant and Appellant.

No. 4064.   Argued March 16, 1927.—Decided July 12, 1927.

*Attorney General George C. Butte, Carlos Llauger* and *Felipe Janer* for the appellant.   *García Menéndez & García Méndez* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This is a petition for a writ of mandamus ordering that the Pension Board of the Permanent Officials and Employees of the Government created by Act No. 22 of September 22, 1923, as amended by Act No. 104 of 1925, allow the voluntary retirement of the petitioner who has been rendering services as a government official for more than twenty years. The services rendered by the petitioner, as alleged in the petition, consist in his having filled the position of Justice of the Peace of Moca from July 1, 1905, until 1913, when he was appointed clerk of the Municipal Court of Aguadilla, which position he is still holding.

The Pension Board refused his application on the ground that the services rendered by him as justice of the peace from 1905 to 1913 are considered as municipal services and

can not be credited within the meaning of the Retirement Act.

The trial court, however, sustained the petitioner and the Pension Board appealed from that judgment.

The only question raised in this case is whether or not the services rendered by the petitioner from 1905 to 1913 as Justice of the Peace of Moca can be credited to him under the provisions of the Retirement Act. This depends on the nature of the office of justice of the peace and on whether he was an insular or a municipal official.

Section 33 of the former Organic Act, known as the Foraker Act, of April 12, 1900, provided that the judicial power should be vested in the courts and tribunals already established upon the enactment of the Act, including municipal and police courts. The same section provided that the Legislative Assembly of Porto Rico "shall have authority to legislate from time to time as it may see fit with respect to said courts, and any others they may deem it advisable to establish . . . ."

Under this authority the Legislature enacted on March 10, 1904, the "Act Reorganizing the Judiciary of Porto Rico, Etc.," which in its section 14 provides as follows:

"In all the municipalities except those of San Juan, Ponce and Mayagüez, for which provision has been made in section 4 of this Act, and except in districts with a municipal court in which there is only one town, there shall be appointed a justice of the peace, with jurisdiction to hear and determine offenses in which the punishment imposed may not exceed a fine of fifteen dollars, or imprisonment not to exceed thirty days; and they shall also have jurisdiction in all cases of violations of municipal ordinances, and during the absence of the municipal judge the justice of the peace shall act as an examining and committing magistrate; *Provided,* that in the towns in which there is no justice courts the respective municipal judges of said towns, in addition to the jurisdiction already conferred on them by this Act, shall have jurisdiction in cases for violations of municipal ordinances. The justices of the peace shall be appointed by the Governor, by and with the advice and consent of the Executive

Council, and they 'shall receive a salary of three hundred sixty dollars each per annum, which salary shall be paid from the municipal treasury of the respective municipalities for which they are appointed, and all the fines imposed and collected by such justices 'shall be covered into the respective municipal treasuries. Each of said justices of the peace 'shall have a bailiff for his court, with authority to execute all process, who shall receive a salary of fifteen dollars per month, to be paid by the respective municipalities.''

On March 4, 1905, another act was enacted reorganizing the justice of the peace courts and in addition to those already in existence some others were created, among which was included that of Moca to which position the petitioner was appointed in July, 1905. Section 1 of that Act, after enumerating the courts created, provides that ''all the qualifications regarding the personnel, appointment, and jurisdiction of said justices' courts shall be subject to the provisions of an act to reorganize the judiciary of Porto Rico, etc., etc., approved March tenth, nineteen hundred and four.''

According to that legislation the justices of the peace, whether considered from the origin of their appointment or from their official functions and duties, can not be held to be municipal officers. The mere fact that they have jurisdiction of all violations of the municipal ordinances is no reason for giving them that character. Likewise the municipal judges in municipal court districts in which there is only one town have jurisdiction of all cases of violation of the municipal ordinances, and it could not be concluded from, that fact or from the fact that they are called municipal judges that they shall be considered as· municipal officers. Perhaps it might be argued that as the justices of the peace receive their salaries from the municipal treasuries, this fact might classify them as municipal officials. However, the Legislature makes provision for such salaries without any intervention from the municipalities, and if they are paid out of the municipal funds it is surely because all fines imposed by such justices are covered into the municipal treas-

uries. On the other hand, we have found nothing in the
Municipal Law to make the justices of the peace dependent
in any manner on the municipal authorities.

The appellant contends, however, that its theory is not
whether a justice of the peace is an insular or a municipal
official, but whether within the meaning of section 2 of the
Act to establish the retirement of insular officials the serv-
ices of the petitioner are rendered in the municipal branch.
In support thereof it cites the cases of *Wolf* v. *Hope et al.*
70 N. E. 1086, and *Reid* v. *Stevens*, 126 N.Y.S. 379. In the
latter case justices of the peace are mentioned in the Consti-
tution of the State of New York and they are defined therein
expressly as city officers. In the former case they are not
mentioned in the Constitution of Illinois and are held to be
municipal officials. However, those cases can not serve as
a standard for establishing general principles, because the
determination of the nature of the office of justice of the
peace depends in the majority of cases on the construction
of the respective constitutional and statutory provisions of
each state. Thus in *State of Kansas ex rel. George W. Scott*
v. *D. D. Parry,* 21 L.R.A. (Old Series), 669, the summary of
the opinion of the court reads:

"The cities of the state of Kansas are 'townships,' within the
meaning of the Constitution and statutes for the purposes of the elec-
tion of justices of the peace, and such officers, although elected
within a city, are not strictly city officers. Their official duties are
not limited to the boundaries of the cities in which they are elected,
nor by the provisions of the charters or ordinances of the city in
which they reside. Their civil and criminal jurisdiction are coexten-
sive with their counties, except as otherwise provided by law."

In 35 Corpus Juris, p. 450, the jurisprudence is sum-
marized regarding the nature of the office of justice of the
peace as follows:

"Nature of office. Justices are public officers. They were orig-
inally county officers, and at the present time the constitutional
and statutory provisions relating to their election and territorial

jurisdiction are such that they are frequently held, for some purposes at least, to be county officers. Under some constitutions or statutes, however, justices are held to be township or precinct officers. . . A justice in the District of Columbia is an officer of the United States.''

The last part is the doctrine laid down in the case of *Wise* v. *Withers*, 3 U. S. (Cranch), 331, 2 L. ed. 457, where the Supreme Court, referring to the office of justice of the peace of the District of Columbia, said:

''It has been decided in this court, that a justice of the peace is an officer; nor can it be conceived that the affirmative of this proposition, was it now undecided, could be controverted. Under the sanction of a law, he is appointed by the president, by and with the advice and consent of the senate, and receives his commission from the president. We know not by what terms an officer can be defined, which would not embrace this description of persons. If he is an officer, he must be an officer under the government of the United States. Deriving all his authority from the legislature and president of the United States he certainly is not the officer of any other government.''

It seems also that the theory of the appellant arises from an erroneous construction of section 2 of Act No. 104 on the retirement of officials. In order to understand properly the meaning of this section where it provides ''that no credit shall be allowed for services rendered in the municipal branch of the Government,'' it must be considered together with section 1 of that Act. These sections read as follows:

''Section 1.—The retirement of the permanent officials and employees of the Insular Government of Porto Rico is hereby established. This Act shall cover all officials and employees of the classified and unclassified civil service of the Insular Government of Porto Rico with the exception of the Judges of the Supreme Court, professors of the University of Porto Rico, public-school teachers, members of the Insular Police and municipal employees.

''Section 2.—The total period of service which shall serve as a basis in computing the amount of any pension provided herein, shall be computed from the date of the original appointment of said officer or employee, whether he belongs to the classified or unclassified

service, including periods of service at different times and in one or more departments or offices of the Insular Government. Also services rendered to the Civil Government of the United States, and during the world war in the Army, Navy, Marine Corps, or Coast Guard service of the United States, such services to be computed from the date of the commission, enlistment, or entrance into any of said services within the period comprised between April 6, 1917, and the date on which the party concerned was honorably discharged: *Provided,* That no credit shall be allowed for services rendered prior to May 1, 1900, nor for services in the municipal branch of the Government.''

It may be seen that section 1 excludes from the operation of the Act certain officials and employees, among whom are named municipal employees. Therefore section 2, in providing that no credit shall be allowed for services rendered in the municipal branch of the Government, must refer to services rendered by municipal employees. If the petitioner had filled the office of secretary or mayor of the municipality of Moca it is evident that those services were not accumulative with services rendered in an office of the insular government. But the petitioner was justice of the peace and the fact that he was rendering his services in the municipal district of Moca did not affect his capacity as insular official, and it was as such that he was rendering the services and not in the branch of the municipal government.

For the foregoing reasons the judgment appealed from must be affirmed.